David PLAFCAN *v.* Mary Louise Plafcan GRIGGS

86-277                              724 S.W.2d 467

Supreme Court of Arkansas
Opinion delivered March 2, 1987

*James M. Thweatt*, for appellant.

*Lovell & Arnold*, for appellee.

DARRELL HICKMAN, Justice. The issue in this case is whether an oral year-to-year leasehold interest ends with the death of the life tenant lessor or is extended by a statutory notice requirement. The trial court held the lease ended with the death of the lessor. The lessee, David Plafcan, appeals from that decision arguing that he did not receive notice to terminate in accordance with Ark. Stat. Ann. § 50-531 (Supp. 1985). He also questions the damages awarded by the chancellor.

The facts regarding the title to the land and the parties' situation are undisputed. David Plafcan is a farmer in Lonoke County, Arkansas, working over 500 acres of land, which included a 70 acre tract, the subject of this dispute. He held that land by oral agreement on a year-to-year basis from Florence Plafcan, his mother, who had a life estate. He paid the usual rent of one fourth of the crop. The remainderman, who owned the land subject to the life estate, was appellee, Mary Louise Plafcan Griggs. She was married to appellant's brother, now deceased. Florence Plafcan died on February 9, 1985, and Griggs became the owner of the land in fee simple absolute. She ordered Plafcan to pay cash rent for the land or vacate, but he refused. He had planted a fall wheat crop in 1984. He harvested it and planted beans. He claimed he was not required to vacate the land because he did not receive notice prior to June 30, 1984, as required by Ark. Stat. Ann. § 50-531, which reads:

> The owner of farm lands which are leased under an oral agreement may elect not to renew the oral rental or lease agreement for the following calendar year by giving written notice by certified registered mail to the renter or lessee, on or before June 30, that the lease or rental agreement will not be renewed for the following calendar year.

The chancellor held that this statute did not change the settled law that upon the death of a life tenant, any interest of a lessee holding under the life tenant ceases. He was right. See *Edwards* v. *Griffin*, 228 Ark. 844, 310 S.W.2d 798 (1958). In

*Dupree* v. *Worthen Bank & Trust Co.*, 260 Ark. 673, 543 S.W.2d 465 (1976), we reaffirmed *Edwards* and quoted a statement from 6 A.L.R. 1506 that "a lease made by a tenant for life terminates instantly on his death. . . ." A tenant can have no greater interest in land than his lessor. *Edwards* v. *Griffin, supra.* A life tenant cannot convey a greater interest than his own. Restatement of Property § 108, comment a (1936); C. Moynihan, *Introduction to the Law of Real Property* 59 (1962). Therefore, one who leases from a life tenant has no interest once the life tenant dies. *Edwards* v. *Griffin, supra; Dupree* v. *Worthen Bank & Trust Co., supra.*

The Arkansas legislature, by enacting § 50-531, did not intend to alter the legal interest which a tenant has in land; the statute only establishes a date when an owner has to give notice to terminate a year to year farm lease. Unless the remainderman agrees to allow the tenant to remain, the tenant has no interest in the land. In this case the remainderman Griggs gave no such permission; instead notice was given to vacate.

The chancellor heard extensive testimony regarding damages. Griggs claimed damages for the rental value of the property, for the removal or destruction of a rice well, and for a house on the property. She also asked for a return or portion of the Agricultural Stabilization and Conservation payments.

The chancellor decided that Plafcan was entitled to the wheat crop and Griggs would receive the landlord's usual share of one fourth. Plafcan sold the wheat crop for hog feed for $1,052 and some odd cents. He received a diversion payment from the government for the wheat crop in the sum of $965.80. One fourth of the income from the wheat is $504.40. Plafcan received a payment from the federal government in late January, 1985, just before the death of Florence Plafcan, as a rice deficiency payment for the 1984-1985 crop year. (A deficiency payment is made when no crop is planted.) The total sum alloted to the 70 acre tract, according to Wayne Perryman, executive director of the Lonoke County A.S.C.S., was $3,994.56. It was undisputed that approximately half of this sum was paid in January with three fourths going to Plafcan and one fourth to Florence Plafcan. Plafcan's share would be about $1,497.96.

The chancellor in his decree found "[t]hat Plaintiff, Mary

Louise Griggs should have judgment against defendant, David Plafcan, for the sum of $2,035.78, representing payment for the pro rata share of the wheat crop to the owner for rent and a return of A.S.C.S. payments which he received, which should have been received by plaintiff, Mary Louise Griggs."

Plafcan argues the damage award "as to the wheat crop is not supported in the record and was based on speculation." The findings of the chancellor were fairly explicit. If Griggs received a fourth of what the wheat crop produced, that would be $504.40. So the court could have awarded $504.40 for the wheat crop. Add that to $1,497.60, which is about the sum Plafcan received in January, 1985, and this totals $2,002.36. This figure is only $33.42 off from the award made. Therefore, the award was not based on speculation.

Neither the appellant nor the appellee could conclude how the chancellor arrived at the figure of $2,035.78. Evidently, the chancellor inserted this amount after the trial. Both parties and the judge discussed at length all the figures that were presented regarding the wheat crop and payments which were received or could have been received from the government. Our rule is limited to finding whether the chancellor was clearly wrong.

On appeal the appellant has the responsibility to show the chancellor was clearly wrong in his findings. ARCP Rule 52(a). Plafcan did not meet this burden and we cannot say the chancellor was clearly wrong in his award of damages.

Affirmed.